**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GRAHAM PACKAGING** | : | |
| **COMPANY, L.P.,** | : | |
| **Plaintiff** | : | **No. 1:15-cv-01186** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **TRANSPLACE TEXAS, L.P.,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Before the Court is Defendant Transplace Texas, L.P.'s motion to partially dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 14.)  For the reasons that follow, Defendant's motion will be denied.

## I.      BACKGROUND

This case arises from a dispute between Plaintiff Graham Packaging Company, L.P., a plastic container manufacturer, and Defendant Transplace Texas, L.P., a transportation logistics provider.  (Doc. No. 1.)  In late 2012 and early 2013, Plaintiff sought bids from multiple companies, including Defendant, for transportation services.  (Id. ¶ 5.)  During this time, Defendant allegedly made representations that, if Plaintiff contracted with Defendant, Plaintiff would achieve significant savings on transportation costs.  (See id. ¶ 51.)  The parties signed a Letter of Intent on March 5, 2013 and subsequently entered into a "Transportation Management Services Agreement" ("Agreement") on May 30, 2013.  (Id. ¶¶ 6, 10.)

Under the Agreement, Defendant would, inter alia, contact motor carriers and be responsible for "the contracts, rates, negotiations, capacity commitments, freight audit and payment, cargo claims management, and setting the service standards with its carriers."  (Doc. 1-1 at 28; see Doc. No. 1 ¶ 11.)  According to the complaint, the Agreement also included a "savings commitment" which guaranteed Plaintiff $1,500,000 in transportation savings for the

1

twelve months following July 1, 2013.  (Doc. No. 1 ¶¶ 15, 21-22.)  Plaintiff's transportation costs, however, allegedly increased by approximately $2,200,000 during the twelve-month period.  (Id. ¶ 24.)

On June 17, 2015, Plaintiff filed a complaint against Defendant for breach of contract (Counts I and II), intentional misrepresentation (Count III), and negligent misrepresentation (Count IV).  (Id.)  Plaintiff seeks to recover $1,500,000 in savings not realized under the contract and the approximately $2,200,000 in additional overage costs incurred under the contract.  (Id. ¶¶ 36, 40, 48-49, 59.)  On August 10, 2015, Defendant filed this motion to dismiss Plaintiffs' claims for intentional misrepresentation and negligent misrepresentation pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 14 ¶ 4.)  Plaintiff filed a brief in opposition to the motion on September 4, 2015, (Doc. No. 21), and Defendant filed a reply on September 18, 2015 (Doc. No. 22).  Accordingly, the motion is now ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft

v. Iqbal, 556 U.S. 662, 663 (2009) (citing Twombly, 550 U.S. at 556).  A court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).

As such, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, or they risk dismissal.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To determine the sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III.   DISCUSSION

### A.   Application of the Economic Loss Doctrine

Defendant urges the Court to dismiss Plaintiff's intentional and negligent misrepresentation claims as barred by the "gist of the action" doctrine or the economic loss doctrine.  (Doc. No. 14 ¶ 4.)  The two doctrines, gist of the action and economic loss, are closely related.  Both doctrines are "designed to maintain the conceptual distinction between breach of contract claims and tort claims."  See Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 548 (3d Cir. 2010) (applying gist of the action doctrine); Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (applying economic loss doctrine) (interior citations omitted).  The

gist of the action doctrine precludes "plaintiffs from re-casting ordinary breach of contract claims into tort claims." Pediatrix, 602 F.3d at 548.  The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Werwinski, 286 F.3d at 671 (internal citation omitted).

"The distinction between the two doctrines is largely one of pedigree."  7 Hon. Michael M. Baylson et al., Business and Commercial Litigation in Federal Courts § 78:8 (3d ed.).  The economic loss doctrine "developed in the context of courts' precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself."  Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 n.11 (3d Cir. 2001) (internal citations omitted).  The gist of the action doctrine developed outside the context of products liability cases.  Id.

In Bohler-Uddeholm America, Inc. and Pediatrix Screening, Inc., the United States Court of Appeals for the Third Circuit noted that the gist of the action doctrine "is a better fit" than "the economic-loss doctrine" for a non-products liability case.  See Bohler-Uddeholm Am., Inc., 247 F.3d at 104 n.11 ("The 'gist-of-the-action' test is a better fit for this non-products liability case."); see also Pediatrix Screening, Inc., 602 F.3d at 544 & n.5 ("[T]he parties have used 'gist of the action' and 'economic loss' interchangeably …'[g]ist of the action" is a better fit, and we will use it in this opinion.").  Accordingly, because this is not a products liability case, the Court will consider only whether the gist of the action doctrine applies to bar Plaintiff's misrepresentation claims and will deny Defendant's motion as it relates to the economic loss doctrine.  E.g., Maryland Cas. Co. v. Preferred Fire Prot., Inc., No. 14-245, 2014 WL 4218715, at *4 (W.D. Pa. Aug. 25, 2014) (explaining that the "economic loss doctrine is reserved for those cases involving products liability"); Kimberton Healthcare Consulting, Inc. v. Primary

PhysicianCare, Inc., No. 11-4568, 2011 WL 6046923, at *7 (E.D. Pa. Dec. 6, 2011); Mikola v.

Penn Lyon Homes, Inc., No. 07-0612, 2008 WL 2357688, at *7 (M.D. Pa. June 4, 2008).[1]

## B.    Gist of the Action Doctrine

Defendant contends that Plaintiff's misrepresentation claims are nothing more than a re-

characterized contract claim and are, therefore, barred by the gist of the action doctrine.  (Doc.

No. 15 at 5.)  Plaintiff counters that the doctrine does not bar its misrepresentation claims

because the two Counts relate to activity that occurred prior to entering into the Agreement.

(Doc. No. 21 at 3.)  In particular, Plaintiff argues that the gist of the action doctrine does not

apply to bar "fraud in the inducement" claims under Pennsylvania law.  (Id. at 5-6.)

"The gist of the action doctrine precludes tort claims where the true gravamen, or gist, of

the claim sounds in contract."  Dommel Properties LLC v. Jonestown Bank & Trust Co., No. 14-

3564, 2015 WL 5438847, at *2 (3d Cir. Sept. 16, 2015).  The doctrine bars plaintiffs from

"recasting ordinary breach of contract claims into tort claims."  Jones v. ABN Amro Mortgage

Grp., Inc., 606 F.3d 119, 123 (3d Cir. 2010).  "The critical conceptual distinction between a

breach of contract claim and a tort claim is that the former arises out of 'breaches of duties

imposed by mutual consensus agreements between particular individuals,' while the latter arises

out of 'breaches of duties imposed by law as a matter of social policy.'"  Reardon v. Allegheny

Coll., 926 A.2d 477, 486-87 (Pa. Super. Ct. 2007); accord Jones, 606 F.3d at 123.

In Bruno v. Erie Insurance Company, the Pennsylvania Supreme Court "reaffirm[ed]"

this "duty-based demarcation" by concluding that "the nature of the duty alleged to have been

breached" is "the critical determinative factor in determining whether the claim is truly one in

tort, or for breach of contract."  Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014) (emphasis

---

[1] As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case.  (Doc. No. 1-1 at 11, 25-26.)

added).  As such, the nature of the duty allegedly breached is the determinative factor in

determining whether the gist of the action doctrine applies.  Id. at 50-51.[2]

Accordingly, under Bruno, the Court must consider whether the relevant facts, as pleaded

in Counts III and IV of Plaintiff's complaint, state a claim for Defendant's breach of a

contractual obligation created by the Agreement or, rather, for a "breach of an independent social

duty imposed by the law of torts."  Bruno, 106 A.3d at 68, 70-71; see Dommel Properties LLC,

2015 WL 5438847, at *4.  Here, in Counts III and IV, Plaintiff alleges that Defendant

intentionally misrepresented or, in the alternative, negligently misrepresented the amount

Plaintiff would save on its transportation costs if it contracted with Defendant.  (Doc. No. 1 ¶¶

51, 58-59, 61, 64, 69.)  Plaintiff contends that, before signing the Agreement, Defendant

guaranteed $1,500,000 in transportation savings despite having actual or constructive knowledge

that the representation was "unrealistic and unattainable."  (See id. ¶¶ 51, 55, 63-65.)  Plaintiff

points to a purported statement by the Defendant's Senior Vice President as evidence that

Defendant knew the "$1,500,000 in savings was unrealistic and unattainable" before the parties

---

[2] The Bruno decision also limits this Court's reliance on earlier jurisprudence that barred "misrepresentations as to duties later enshrined in a contract" under the gist of the action doctrine.  The Court is cognizant that federal district courts in this Circuit have often followed a Pennsylvania Superior Court decision, eToll, Inc. v. Elias/Savion Advert., Inc. 811 A.2d 10 (Pa. Super. Ct. 2002), and concluded that "misrepresentations as to duties later enshrined in a contract are barred by the [gist of the action] doctrine."  See, e.g., Wen v. Willis, No. 15-1328, 2015 WL 4611903, at **5-6 (E.D. Pa. July 31, 2015) (quoting Vives v. Rodriguez, 849 F. Supp. 2d 507, 522 (E.D. Pa. 2012)).  However, citing Bruno, the Third Circuit recently cautioned against relying on such jurisprudence:

While the Bruno court did not explicitly overrule eToll or its progeny, it explained that eToll creates a divide in the gist of the action jurisprudence, did not rely on any of the eToll factors in reaffirming the duty-based standard from which eToll departs, and cabined reliance on eToll's "inextricably intertwined" language.

Dommel Properties LLC, 2015 WL 5438847, at **3-4.  In Dommel Properties LLC, the Third Circuit vacated and remanded a district court decision that analyzed whether a claimant's negligent misrepresentation and fraud claims were "plainly linked to" or "inextricably intertwined with" the contractual obligations, instead of engaging in the "duty-based" analysis that Bruno advanced.  Id.

signed the Agreement.  (Id. ¶¶ 55, 65.)  Plaintiff also alleges that Defendant's representations were material to Plaintiff's decision to enter into the Agreement, that Plaintiff relied on the representations to its detriment, and that the resulting injury was proximately caused by Defendant's representations.  (Id. ¶¶ 52, 56-58.)

Construing the alleged facts in the light most favorable to Plaintiff, Counts III and IV adequately allege that Defendant breached an independent social duty imposed by the law of torts, not a "contractual obligation created by the Agreement."[3]  See, e.g., Kennedy v. Allstate Prop. & Cas. Ins. Co., No. 15-2221, 2015 WL 4111816, at *5 (E.D. Pa. July 8, 2015) (concluding that gist of the action doctrine does not prevent plaintiffs from stating a negligence claim based on alleged misrepresentations because plaintiffs "alleged [a] breach of a general social duty"); Mendelsohn, Drucker & Associates v. Titan Atlas Mfg., Inc., 885 F. Supp. 2d 767, 790 (E.D. Pa. 2012) (finding a plaintiff's claim for fraudulent inducement was collateral to a contract "because it constitutes a breach of duties of honesty imposed by society, not contractual duties contained" in the agreement); Air Products & Chemicals, Inc. v. Eaton Metal Products Co., 256 F. Supp. 2d 329, 341 (E.D. Pa. 2003) ("[F]raud in the inducement claims are much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists"); Am. Guarantee & Liab. Ins. Co. v. Fojanini, 90 F. Supp. 2d

---

[3] Under Pennsylvania law, the elements of intentional misrepresentation are as follows: (1) [a] representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance.  Bortz v. Noon, 556 Pa. 489, 499, 729 A.2d 555, 560 (1999) (internal citations omitted).  "The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words."  Id. at 561.

615, 623 (E.D. Pa. 2000).[4]  Accordingly, the Court will decline to dismiss Plaintiff's intentional and negligent misrepresentation claims as barred by the gist of the action doctrine.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion to partially dismiss the amended complaint will be denied.  An order consistent with this memorandum follows.

---

[4] Moreover, as to Plaintiff's intentional misrepresentation claim, the Court's finding is consistent with recent Pennsylvania Superior Court decisions concluding that the gist of the action doctrine does not bar fraudulent inducement claims.  See Mirizio v. Joseph, 4 A.3d 1073, 1085, 1087 (Pa. Super. Ct. 2010); Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 719 (Pa. Super. Ct. 2005) ("[S]ince Appellant's tort claims relate to the inducement to contract, they are collateral to the performance of the contracts and therefore, are not barred by the gist-of-the action doctrine.").